UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DAVID LACHAPELLE, an individual, and
DAVID LACHAPELLE STUDIOS, INC. a
New York Corporation,

          Plaintiffs,

          -against-

FRED TORRES, an individual d/b/a FRED
TORRES COLLABORATIONS and FINE
ART ACCOUNT, INC, a corporation d/b/a
FRED TORRES COLLABORATIONS,
JAMES PARMENTER, an individual,


          Defendant.

---

CASE NO.  12-cv-9362



**SECOND AMENDED COMPLAINT**

**TRIAL BY JURY REQUESTED**

 

     Plaintiffs David LaChapelle and David LaChapelle Studios Inc., by its attorneys Wilk Auslander and Brownstein Hyatt Farber Schreck, for their Complaint against Defendants Fred Torres d/b/a Fred Torres Collaborations, Fine Art Accounts d/b/a Fred Torres Collaborations and James Parmenter allege as their Second Amended Complaint as follows:

## THE PARTIES

     1.     Plaintiff David LaChapelle ("LaChapelle") is a resident of Los Angeles, California.

     2.     David LaChapelle Studios, Inc. ("DLC") is a New York corporation with its principal place of business located at 427 W. 21st Street, Parlor Floor, New York, NY 10011.

     3.     Defendant Fred Torres ("Torres") is a resident of the City of New York, State of New York.

4.     Defendant Fine Art Account, Inc. ("FAA") is a New York corporation which Plaintiffs are informed and believe, and thereon allege, has its principal place of business in New York, New York.

5.     FAA operates under the fictitious business name Fred Torres Collaborations ("FTC").  LaChapelle and DLC (collectively "Plaintiffs") are informed and believe, and thereon allege, that Torres also acts under that same fictitious business name.

6.     Defendant James Parmenter ("Parmenter") is a resident of the State of New York.

### JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this action under 15 U.S.C. §1125(a), 17 U.S.C. §101, 28 U.S.C. §1331 at 28 U.S.C. §1338..  The amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

8.     This court has personal jurisdiction over Torres, Parmenter and  FAA/FTC (collectively "Defendants") because, *inter alia*, Defendants committed tortious acts in the State of New York causing injury to Plaintiffs, their business and their valuable intellectual property within the State of New York.  Defendants conduct business in the State of New York and derive substantial revenue from interstate commerce originating in New York.

9.     Venue is proper in the United States District Court for the Southern District pursuant to 28 U.S.C. §§1391 (b)(1) & (b)(2) and 28 U.S.C § 1400(a).

### FACTS COMMON TO ALL CAUSES OF ACTION

10.     LaChapelle is a world renowned photographer and director whose career spans three decades.  LaChapelle's vibrant images have appeared in the pages of *Vanity Fair*, *French Vogue, Italian Vogue, GQ* and *Rolling Stone*.  He has created memorable portraits of high-profile figures, including Elizabeth Taylor, Muhammad Ali, Madonna, Hillary Clinton, Eminem and

Leonardo DiCaprio.  LaChapelle has directed music videos for popular musicians and bands, including Britney Spears, Christina Aguilera, Elton John, and Florence and the Machine. He is also the director of the critically acclaimed documentary, *RIZE*.  In recent years, LaChapelle has concentrated on fine art photography. His work has appeared in museums all over the world, including the Fotografiska Museum, Stockholm, Palazzo Reale, Milan, Hangaram Design Museum, Seoul and Tel Aviv Museum of Art.  LaChapelle's fine art photographs have great aesthetic and monetary value.  The LaChapelle name is known world-wide.

11.    DLC is engaged in the business of creating photographic works, including fine art photography, and rendering LaChapelle's services as an artist.  DLC derives revenue from the sale, consignment and exhibition of LaChapelle's fine art photography.  LaChapelle is the Chief Executive Officer of DLC.

12.    Torres is an artists' agent, manager and promoter.  He represents clients in the exhibition and sale of their artwork, and acts as a liaison among artists, galleries, museums, art purchasers and others.

13.    Torres is also the principal of FAA.  Plaintiffs are informed and believe, and thereon allege that, Torres and FAA conduct business under the fictitious business name, Fred Torres Collaborations.  Because FAA does business under the name Fred Torres collaborations and because many of the relevant documents refer to Fred Torres Collaborations rather than Fine Art Accounts, FAA is referred to herein as "FTC" to avoid confusion. Fred Torres Collaborations principal place of business is located at 427 W. 29th Street, 3rd Floor, New York, NY 10001.

14.    Plaintiffs are informed and believe and thereupon allege that Parmenter is a former bartender who was recently hired by Torres/FTC as a gallery manager.

3

15.     LaChapelle and Torres have been acquainted for many years.  In late 2005, Torres approached LaChapelle and proposed that he, Torres, assume manager/agent's duties with respect to LaChapelle's and DLC's fine art photography.  LaChapelle agreed.  Thereafter, Torres undertook responsibility for arranging exhibitions of LaChapelle's artwork, advising LaChapelle in his career, managing Plaintiffs' ongoing relationships with individual clients, galleries and museums, and contracting with third party artisans (including printers and framers) for the fabrication of LaChapelle's artwork (i.e., the process of making prints from the digitalized images in which many of LaChapelle's works are fixed).  Early in the relationship, Torres began doing business as FTC.  In the course of the parties' agency relationship, LaChapelle/DLC delivered fine art photography to Torres/FTC for the purpose of exhibition and sale.  Torres/FTC received commissions and other compensation in exchange for their services.  In their capacities as Plaintiffs' agents, Torres/FTC accepted LaChapelle's fine art and caused it to be exhibited, consigned  and sold.

16.     Torres/FTC negotiated art sales, sent invoices to buyers, collected the proceeds from sales, consignments and exhibitions, paid vendors, deducted a percentage for its services and remitted a percentage to Plaintiffs.  In their capacity as Plaintiffs' agents, Torres/FTC entered into agreements with galleries and museums on Plaintiffs' behalf. At all times, the individuals and entities with whom Torres/FTC entered into these agreements knew or had reason to know that Torres/FTC was acting on behalf of their principals, LaChapelle and DLC.

17.     Torres/FTC were responsible for preparing and maintaining -- and did prepare and maintain -- business records relating to the exhibition, consignment and sale of LaChapelle's art.  Torres/FTC handled much of the day-to-day administrative work of plaintiffs' art sales, exhibitions and consignments.

18.   The parties' working arrangement was never reduced to a full and complete writing. However, they agreed on the following terms:

- Torres/FTC were to receive orders for art work from purchasers.

- Torres/FTC were to receive all payments for LaChapelle's artwork.

- Torres/FTC were to arrange for the fabrication of, and bear the cost of fabricating of artwork ordered by purchasers, consignees, museums and others.  The parties understood that fabrication costs included the cost of printing, mounting and framing LaChapelle images.

- Within 30 days of receipt of payment in full for each art work, Torres/FTC were obliged to remit to Plaintiffs a percentage of the retail sales price.  If the sale was made through a gallery ("Gallery Sale"), Torres/FTC were obliged to remit to Plaintiffs 40% of the retail sales price. If the sale was to an individual client, ("Direct Sale"), Torres/FTC were obliged to remit to Plaintiffs 50% of the sales price.  If the sale was to a museum ("Museum Sale"), Torres/FTC were required to remit to Plaintiffs 50% of the actual sales price (as opposed to the retail price). For personal portrait sessions arranged by Torres/FTC, they were obliged to remit to Plaintiffs 75% of the net proceeds from the sale (sales price less documented costs, including fabrication costs).  For catalogue and merchandizing sales, Torres/FTC obliged to remit to Plaintiffs 50% of the net receipts, if any, of such sales.  For revenue derived from museum exhibitions, Torres/FTC were obliged to remit to Plaintiffs 50% of the net receipts, if any.

- In consideration of manager/agent services, Torres/FTC were entitled to retain the balance of the purchase price – an amount which varied depending on the terms of the sale.

- Torres/FTC were obliged to maintain complete, accurate records of art sales, consignment contracts, exhibition agreements, traveling documents and documents related to other fine art transactions. They were further obliged to maintain complete, accurate records of costs and expenses.

19.     Under the above-described arrangement, Torres/FTC acquired virtually complete control over the financial and operational aspects of LaChapelle's fine art photography business. Further, because Torres/FTC were widely known as LaChapelle's fine art agents, their actions and business dealings on Plaintiffs' behalf affected the manner in which Plaintiffs were perceived by the art community.

20.     Pursuant to New York Arts and Cultural Affairs Law § 12.01 (1995 amendment), which governs all artist/art merchant relationships entered into prior to November 15, 2012, Torres/FTC owed to Plaintiffs a duty of trust and confidence. Defendants held all of Plaintiffs' works in trust for the Plaintiffs' benefit. None of LaChapelle's fine art was subject to liens or security interests of any kind. All proceeds from the sale of such works were "trust funds" which Torres/FTC to hold in trust for Plaintiffs' benefit.

21.     From the outset of the artist/agent relationship to September 2012, Plaintiffs conferred upon Torres/FTC the right to act on their behalf in the sale, exhibition or consignment of fine art photography. Plaintiffs placed trust and confidence in Torres/FTC in business matters relating to LaChapelle's fine art photography, and justifiably believed Torres/FTC were acting in their best interests. In the context of that relationship, LaChapelle permitted Defendants to use

the LaChapelle name in the media, including the Internet, to promote themselves as the exclusive representatives of LaChapelle's fine art photography.  Torres/FTC did not, by virtue of their agency, acquire title to, or copyright in, any LaChapelle artwork.

22.    While acting as Plaintiffs' agent, Defendants began to pressure clients to incur costs that the parties had previously agreed would be borne by Torres/FTC.  For example, Torres/FTC would charge third party consignees for fabrication costs.  They also pressured galleries to accept less than their standard share of the proceeds from sales.  By way of illustration, at the outset of Torres/FTC's tenure as agents, the proceeds from gallery sales were divided as follows:  Gallery -- 50%, DLC -- 40%, Torres/FTC -- 10%.  The cost of fabrication -- usually around 2% -- was borne by Torres/FTC.  Within a short time, Torres/FTC began negotiating agreements that favored themselves, by, *inter alia*, charging galleries for fabrication costs and/or pressuring them to accept less than a 50% share of the proceeds. These negotiations adversely affected plaintiffs' relationships with galleries and other clients.

23.    Plaintiffs warned Torres/FTC to refrain from seeking larger concessions from clients and galleries because it damaged the LaChapelle name in the fine art world. Notwithstanding those warnings, Torres/FTC continued to charge clients and galleries for fabrication costs and continued to pressure galleries to accept a smaller and smaller percentage of the sales price on LaChapelle's works, to their own benefit and to Plaintiffs' detriment.

24.    FTC/Torres never supplied Plaintiffs with regular statements, spread sheets or detailed accountings.  The informal protocol Plaintiffs used to track art sales involved  the delivery of "authentication labels" signed by LaChapelle.  (When an art work is a print of a digitalized image, its commercial value lies in large part in its authentication by the artist. Without an authentication label, such a work decreases significantly in value.)

25.     Pursuant to the parties' informal protocol, when Torres/FTC received a client's order for a LaChapelle print, Torres/FTC were required to receive the appropriate file and match print from Plaintiffs, cause the work to be fabricated by third party artisans, cause the work to be inspected by Plaintiffs, prepare and send an invoice to the client, and collect payment. Torres/FTC's invoices would identify the artwork, the buyer and reflect the purchase price. When Torres/FTC received payment in full for any given work, they were required to send a copy of the invoice and other sales documents to Plaintiffs, and remit plaintiffs' share of the proceeds to Plaintiffs. At that point in the transaction, LaChapelle would sign an authentication label and send it to Torres/FTC. It was then Torres/FTC's responsibility to deliver the label to the client. By retaining invoices and other sales documents and tracking labels, Plaintiffs could determine how many works had been sold, who the purchasers were, how much income it would receive and how much of the proceeds would be retained by Torres/FTC.

26.     In or about November 2011, Torres/FTC breached the parties' established protocol. At that time, Torres told LaChapelle that he needed authentication labels for approximately four hundred thousand dollars ($400,000.00) worth of art work that he/FTC already sold, but could not pay for because of alleged "cash flow" problems. Torres represented to Plaintiffs that he/FTC would receive payment from purchasers "very soon," and would then pay Plaintiffs. Plaintiffs reasonably believed the "cashflow" explanation for Torres/FTC's inability to pay for the artwork associated with the labels. Further, Plaintiffs wanted to ensure that purchasers would receive full value for LaChapelle's work and wanted to maintain the integrity of the LaChapelle name. For those reasons, they provided many signed labels to Torres on condition that Torres/FTC made payment within a reasonable time, not exceeding sixty (60) days.

27.     Months went by.  Torres/FTC did not remit to Plaintiffs their rightful share of the proceeds from sales associated with the labels.  Plaintiffs repeatedly requested payment, however, Torres/FTC have failed and refused to remit to Plaintiffs full and timely payment on the art work associated with the labels and on other fine art sales.

28.     Torres/FTC's reaped tremendous financial benefits in their capacities as Plaintiffs' agents.  In addition, Torres's association with LaChapelle's fine art photography enhanced his standing in the art world.  Before he became LaChapelle's agent, Torres had no gallery and no regular clientele.

29.     On or about April 30, 2012, Plaintiffs met with Torres/FTC to discuss the agents' failure to pay Plaintiffs.  At that time, Torres/FTC's own spreadsheet -- one of only two spreadsheets they ever provided to Plaintiffs -- showed that they owed Plaintiffs $1,092,110.00.  At the meeting, Torres/FTC admitted that they owed  $1,092,110.00 to Plaintiffs.  To preserve their relationship with Plaintiffs, Torres/FTC promised to pay to Plaintiffs $30,000.00 each month to reduce the debt.  Torres/FTC also promised that, in the future, they would abide by the parties' agreement that Plaintiffs' share of revenue from art sales would be remitted within thirty (30) days of Torres/FTC's receipt of payment in full.  A true copy of the April 30, 2012 Spreadsheet is attached hereto as "Exhibit A."

30.     In consideration of Torres/FTC's promises, Plaintiffs agreed to take no legal action to recover the outstanding debt, and further agreed to continue to use Torres/FTC as their agent for LaChapelle's fine art photography.  Torres/FTC never made a single payment pursuant to the April 21, 2011 promise.  Although they continued to sell LaChapelle art, they did not abide by their promise to remit Plaintiffs' share of art sale proceeds within 30 days of receipt.

31.     In or about November, 2012, Torres/FTC provided to Plaintiffs a second spreadsheet dated "As of 8/30/2012" ("Second Spreadsheet"). The Second Spreadsheet purports to list, *inter alia*, all sales made to third parties between March 28 and August 30, 2012. It also purports to show amounts received on such sales by Torres/FTC and amounts owed to Plaintiffs. The Second Spreadsheet states that, as of August 30, 2012, Torres/FTC owed Plaintiffs $2,826,844.84. A true and correct copy of the second Spreadsheet is attached hereto "Exhibit B."

32.     Plaintiffs are informed and believe and thereupon allege that Torres/FTC received full payment for these sales many months before August 30, 2012.

33.     On or about November 15, 2012, through their attorneys, Plaintiffs notified Torres/FTC in writing that, by virtue of Torres/FTC material breach of the parties' agreement, the business relationship between the parties was terminated.

34.     Thereafter, in order to complete ongoing transactions and to insure that clients who paid for their artwork had actually received signed authentication labels, Plaintiffs requested -- repeatedly and in writing -- that Torres/FTC provide basic information on art sales. Torres/FTC refused and continue to refuse to supply that information.

35.     Plaintiffs requested -- repeatedly and in writing -- that Torres/FTC supply back-up documentation on sales made, amounts received and costs allegedly incurred by Torres/FTC. Torres/FTC refused and continue to refuse to supply that information. Torres/FTC failed to deliver artwork for which clients paid in full and failed to deliver authentication labels to clients. Clients imputed those omissions to Plaintiffs. As a direct consequence of FTC's conduct, Plaintiffs' business reputation has been damaged, Plaintiffs have been exposed to legal liability and the good will associated with their business has decreased.

36.     Plaintiffs requested -- repeatedly and in writing -- that Torres/FTC provide all contracts Torres/FTC entered into on Plaintiffs' behalf, including contracts for museum exhibitions.  Torres/FTC refused to provide all but three of between 40 and 50 contracts.  As a direct consequence of this wrongful retention of critical documents, Plaintiffs have been unable to meet their commitments to third parties in a timely and efficient fashion and have spent hundreds of hours of time and effort to repair the resulting damage.

37.     Plaintiffs requested access to LaChapelle's valuable exhibition prints and other original works ("LaChapelle Works") held in storage facilities under Torres/FTC accounts. These works include one-of-a-kind pop-up art made from cardboard and other materials at the expense of DLC; one-of-a-kind collages and sculpture also fabricated at Plaintiffs' expense; archival materials, negatives and other unique and valuable property (the "Unique Artwork"). The Unique Artwork is irreplaceable, and damages are inadequate to compensate Plaintiffs for the loss or damage.

38.     Torres/FTC refused, and continues to refuse, to give Plaintiffs access to the LaChapelle's Works including the Unique Artwork.

39.     On March 26, 2013, pursuant to Court Order, Torres/FTC provided a list of works they currently hold in storage.  The list is incomplete.  Plaintiffs are informed and believe and thereupon allege that Torres/FTC have additional pieces of LaChapelle artwork.  Plaintiff further allege that Torres/FTC fabricated additional works and secreted it in places unknown to Plaintiffs.

40.     On or about March 15, 2013, Torres/FTC removed over 400 LaChapelle Works and Unique Artwork from Cirkers Fine Art Storage -- a high quality facility with optimum storage conditions.  Torres/FTC's deposited the Works in two small containers rented from

Manhattan Mini-Storage at a budget rate. Plaintiffs are informed and believe that Torres/FTC removed the LaChapelle Works and Unique Artwork from their protective crates in order to fit them into the mini-storage containers. The LaChapelle Works and Unique Artwork will bend, warp and degrade in the cramped, substandard mini-storage facilities. Plaintiffs protested, and continue to protest, the storage of Plaintiffs' artwork at facilities inferior to Cirkers. Torres/FTC refused to reveal the artwork's current location or describe the conditions under which the work is being stored. Torres/FTC refused to allow Plaintiffs to inspect the stored prints for damage.

41.     Plaintiffs are informed and believe and thereupon allege that some of the LaChapelle Works were damaged either while in storage or while being transported to the new storage facility.

42.     Following the termination of the agency relationship, Plaintiffs demanded that Torres/FTC cease and desist in exploiting LaChapelle's work and holding themselves out to the public as Plaintiffs' representatives. Torres/FTC refused that demand and continue to act as though they still had authority to act as Plaintiffs' agents. Since the notice of termination, Torres/FTC have represented to the media that they represent LaChapelle's artwork, have arranged and promoted an unauthorized gallery showing of that artwork, have continued to sell LaChapelle catalogues on their internet website and continue to exhibit LaChapelle's work in various locations in Manhattan. As explained further, infra, after Torres/FTC were terminated plaintiffs' agents, they continued to use the LaChapelle name to promote their agents' and gallery service on the Internet.

43.     On March 7, 2013, March 14, 2013 and on other occasions, through their representative, Parmenter, Torres/FTC falsely represented to third parties that they had the

12

authority to possess, and direct, the disposition of the exhibition prints in third parties' lawful custody.  By these false representations, they attempted to misappropriate the exhibit prints.

## FIRST CAUSE OF ACTION

### (Violation of the Lanham Trademark Act, Sec. 43(a) against Torres/FTC)

44.     Plaintiffs repeat and reallege paragraphs 1 - 43 above and incorporate those paragraphs herein.

45.     The David LaChapelle name is associated with a body of commercially valuable and aesthetically desirable artwork, including fine art photography. The LaChapelle name is recognized by members of the public -- particularly art buyers, sellers, museum curators, gallery operators and others in the art world.  It identifies the artist's distinctive artwork and distinguishes it from the work of other artists.  The name has been in continuous use in commerce in connection with Plaintiffs' artwork; Plaintiffs have sold and exhibited artwork under the LaChapelle name all over the world since 1995.  The name has acquired secondary meaning.

46.     During their tenure as Plaintiffs' agents, Torres/FTC were authorized to use the LaChapelle name to promote the sale and exhibition of LaChapelle's artwork.  Torres/FTC used the LaChapelle name on their commercial website, http://www.fredtorres.com/ ( the "Website").

47.     The Website advertises Torres/FTC's business and promotes their services as fine art agents.  It also promotes FTC's art gallery and its online "Book Shop."

48.     The LaChapelle name appeared on the Website under the website menu heading, *"Fred Torres Collaborations Artists."*  When a visitor clicks on this menu option, she sees a list of artists represented by FTC whose artwork was available for purchase through FTC. Reasonable, prudent visitors to the Website understand that FTC represents the artists on the list

and that such artists approve of FTC's services and have authorized FTC to trade in their
artwork.

49.     When visitors to the Website click on the "Book Shop" menu heading, they see a
display of David LaChapelle exhibition catalogs which are available for purchase online.  The
Website's display and sale of LaChapelle's catalogs served to confirm the representation on the
"Artists" page that FTC represents LaChapelle, is authorized to trade in his artwork and is
engaging in these activities with plaintiffs' consent and approval. [1]

50.     Torres/FTC's uses of LaChapelle's name on their Website made a representation
of fact as to LaChapelle's association with, and satisfaction with, FTC and its agent's services.

51.     In addition to its own Website, FTC used the internet website ArtNet.com to
advertise its services and to promote sales.  ArtNet.com provides information about art auctions,
artists' representatives, art prices.  FTC maintained a "seller's page" on ArtNet.  To obtain a
seller's page on ArtNet,  the art dealer must fill out an online registration form  and must upload
text and images to the site.  FTC created a seller's page on ArtNet and listed LaChapelle as one
of the artists it represented.  It also uploaded images of LaChapelle's artwork to the website and
offered them for sale.

52.     On November 15, 2012, Plaintiffs terminated the artist/agent relationship with
Torres/FTC on grounds of, *inter alia*, breach of contract and fraud.  Once the artist/agent
relationship was terminated, Torres/FTC had no authority to use the LaChapelle name in
interstate commerce to promote sales or make representations about their services.  At the time
of the termination and repeatedly thereafter, Plaintiffs advised Torres/FTC and their counsel that
they no longer had authority to state that  LaChapelle was an "Artist" represented by FTC.

---

[1] The Website stated, "Fred Torres collaborations works with artists, galleries, curators and
museums in producing and promoting exhibitions in New York and around the world."

Plaintiffs made repeated requests that defendants remove the LaChapelle name from the "Fred

Torres Collaborations Artists" webpage, and its "Book Shop" page and from its sellers' page on

ArtNet.com.

53.     Torres/FTC refused to comply with the requests.  Instead, they continued to state

on the Website that David LaChapelle was one of FTC's "Artists" and continued to offer

LaChapelle's artwork, including exhibition catalogs, for sale on their "Book Shop" webpage.  By

using  the LaChapelle name in commerce after the termination of their agency, FTC made a false

and misleading representation of fact as to LaChapelle's association with, and satisfaction with,

FTC and its agent's services.  It communicated to the public that FTC was still Plaintiffs' fine art

agent, that Plaintiffs approved of FTC's services and that FTC was authorized to buy, sell,

exhibit and consign LaChapelle's artwork.

54.     FTC also refused to remove Plaintiff's name and artwork from its sellers' page on

ArtNet.com.  For months following the termination,  the page listed LaChapelle as an artist

represented by Fred Torres Collaborations and exhibited his artworks for sale.  Attached hereto

as "Exhibit C" is a true copy of a Fred Torres Collaborations seller's page as it appeared on

March 13, 2013 -- nearly four months after the termination.  Torres/FTC's false and misleading

references to LaChapelle remained on the ArtNet website until at least March 13, 2013.

55.     The false representation on the Website and on ArtNet enhanced Torres/FTC's

status in the art world.  None of FTC's other artists has ever been highly renowned and respected

as LaChapelle and none of their works is as commercially valuable as LaChapelle's.  Torres/FTC

were unjustly enriched by their unauthorized use f the LaChapelle name.

56.     The false representations on the websites had the effect of wrongfully diverting

business from DLC to FTC.  It did this by depriving art buyers of the opportunity to judge fairly

between rival products -- LaChapelle works from an authorized source (i.e., DLC or its authorized representative) and LaChapelle works from a source that had been terminated as Plaintiffs' agent and had no authority to represent them (i.e., FTC).

57.    FTC's false representations also created confusion in the marketplace as to the origin of LaChapelle's work by falsely suggesting that FTC continued to be an authorized dealer of LaChapelle's artwork.

58.    The false representation had the effect of creating ill will among consumers who inaccurately imputed FTC's improper conduct (e.g., failure to complete sales, failure to provide authentication labels to purchasers) to Plaintiffs.

59.    Accordingly, Plaintiffs' commercial interests, good will and business reputation were damaged Torres/FTC's false representations.  By maintaining the false representations on the Internet, Torres/FTC deceptively confused consumers as to Plaintiffs' sponsorship, approval or endorsement of Torres/FTC's services.

60.    In December 2012,  in the course of promoting its services, FTC represented to a newspaper reporter that it had arranged an exhibit of David LaChapelle's artwork in Big Fork, Montana.  A newspaper article to that effect, a true copy of which is attached hereto as "Exhibit D", was published on December 12, 2012.

61.    At the time Torres/FTC made the false representations described above, they were fully aware that that they no longer represented LaChapelle or DLC, had no authority to hold themselves out as Plaintiffs' representatives, and had no right to conduct business on Plaintiffs' behalf.

62    As a result of Torres/FTC's conduct, members of the public are likely to be,  and in fact actually have been, deceived or confused into believing that Torres/FTC is Plaintiff's

authorized agents, that Torres/FTC is authorized to deal in LaChapelle artwork, that plaintiffs approve of and authorize Torres/FTC's services and have given defendants the right to use David LaChapelle's commercially valuable name to promote Defendants' business.

63.     As a direct result of Torres/FTC's conduct, Plaintiffs have been damaged and Torres/FTC have wrongfully benefited by confusion in the marketplace as to Torres/FTC's representation of LaChapelle.  The amount of such damages shall be proven at trial.  The likelihood of further confusion persists as long as Torres/FTC continue falsely claim to be LaChapelle's/DLC's representative.

64.     By engaging in the wrongful conduct described hereinabove, Torres/FTC have violated Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).  Because Torres/FTC engaged in the conduct described herein with fraudulent intent, this is an exceptional case that justifies  an award of treble damages and attorney's fees against the Torres/FTC.

**SECOND CAUSE OF ACTION**

**(Breach of Contract against Torres/FTC)**

65.     Plaintiffs repeat and reallege paragraphs 1 - 64 above and incorporate those paragraphs herein.

66.     Defendants materially breached the oral agreement described hereinabove by:

- Failing to timely remit to Plaintiffs the amounts due under the parties' oral agreement;

- Failing to maintain and/or provide complete accurate documentation of art sales, museum exhibitions, gallery exhibitions, consignment arrangements and other business matters relating to LaChapelle fine art photography;

- Failing to maintain complete, accurate accounts of sales and revenue from other sources, income including museum fees;

- Failing to pay fabrication costs, and instead wrongfully charging clients for fabrication;

- Failing to maintain and/or provide records of costs and expenses;

- Refusing to deliver artwork for which they had been fully paid;

- Refusing to deliver authentication labels associated with paid-for artwork;

- Creating and distributing for their own benefit, unauthorized copies of LaChapelle's artwork.

67.     As a result of Torres/FTC's breaches of the parties' agreement, Plaintiffs have been deprived of their rightful revenue from the sale of LaChapelle's art, in excess of $2,000,000.00.  Plaintiffs have suffered consequential damages -- including lost sales -- as a foreseeable result of Torres/FTC's conduct.  Plaintiffs have also been deprived of basic financial information necessary to the operation of their business.  In addition, DLC have suffered injury to good will as a result of Torres/FTC's failure to deliver artwork and labels.

68.     Prior to Torres/FTC's material breaches, Plaintiffs performed their obligations as specified under the Agreement.  Plaintiffs were excused from further performance by Torres/FTC's material breaches.

### THIRD CAUSE OF ACTION

### (Unjust Enrichment against Torres/FTC)

69.     Plaintiffs repeat and reallege paragraphs 1 - 68 above and incorporate those paragraphs herein.

70.     Torres/FTC have received and taken fees, commissions, property, and other things of value from Plaintiffs to which they were not entitled and from which they wrongfully benefited.  As a direct and proximate result of Torres/FTC's wrongful taking of these items of value and from the wrongful benefits they have received, Plaintiffs have been damaged and Torres/FTC unjustly enriched.

71.     To allow Torres/FTC to keep the wrongful benefits that they have taken would unjustly enrich Torres/FTC at the expense of Plaintiffs, whom are rightfully due the taken fees and commissions and whom rightfully own the property and other things of value.

72.     As a result of Torres/FTC's continued actions, Plaintiffs have been injured and are entitled to damages of an amount to be determined at trial.  This amount includes, but is not limited to, $2,000,000.00 for commissions and fees owed, interest thereon and the return of Plaintiffs' property and other things of value.

## FOURTH CAUSE OF ACTION

### (Breach of Fiduciary Duty against Torres/FTC)

73.     Plaintiffs repeat and reallege paragraphs 1 - 72 above and incorporate those paragraphs herein.

74.     Pursuant to New York Art and Cultural Affairs Law, and in light of the extent of Torres/FTC's control over Plaintiffs' business and financial affairs, and in light of the trust justifiably reposed in Torres/FTC by LaChapelle and DLC, Torres/FTC owed fiduciary to Plaintiffs and were obliged to act for Plaintiffs' benefit and in their best interests.

75.     By engaging in the conduct described herein, Torres/FTC breached their fiduciary duty to Plaintiffs.

76.     As a direct and proximate result of said conduct, Plaintiffs have been damaged in their business in an amount to be proven at trial.  By way of example, Plaintiffs have had to expend hundreds of hours tracking sales, determining costs, communicating with clients and determining whether purchasers actually received authentication labels from Torres/FTC. Plaintiffs have been forced to retain legal counsel and other professional assistance to continue operations, and to repair the damage and losses caused by Torres/FTC's misconduct.  Plaintiffs are informed and believe that their artwork – including some one-of-a-kind, irreplaceable pieces -- has been negligently or deliberately damaged while in Torres/FTC's  custody.

77.     Torres/FTC's conduct was done with the knowledge that it would cause Plaintiffs to suffer financial injury and cause LaChapelle to suffer mental anguish and injury. Torres/FTC's acts were therefore willful, wanton, malicious and oppressive and justify an award of punitive damages.

## FIFTH CAUSE OF ACTION

### (Accounting against Torres/FTC)

78.     Plaintiffs repeat and reallege paragraphs 1 - 77 above and incorporate those paragraphs herein.

79.     At all relevant times, a fiduciary relationship existed between Plaintiffs on one hand and Torres/FTC on the other.

80.     In reliance on that relationship, Plaintiffs entrusted Torres/FTC with money and valuable property.

81.     Torres/FTC conducted a series of transactions on which amounts owed to Plaintiffs remain unpaid.  Torres/FTC are in sole possession of the books of accounts and business records that would enable Plaintiffs to ascertain the full extent of their existing

obligations to third parties and the full amount of damages caused by Torres/FTC's misconduct as herein alleged.  Consequently, Plaintiff's remedies at law are inadequate.

82.     Multiple demands for accounting have been made and Torres/FTC have failed and refused to provide such accounting.

## SIXTH CAUSE OF ACTION

### (Money Had and Received Against Torres/FTC)

83.     Plaintiffs repeat and reallege paragraphs 1 - 82 above and incorporate those paragraphs herein.

84.     Torres/FTC have received monies from customers, exhibitions, galleries, and other sources relating to fees, commissions, and other funds to which Plaintiffs have an ownership interest.

85.     Such monies rightfully belong to Plaintiffs.

86.     Torres/FTC have taken such monies and put them in their own personal accounts. Torres/FTC are unjustly benefiting from their retention of these monies as they are using these funds to pay their own business and personal expenses.

87.     The Plaintiffs suffered financial damage due to Torres/FTC's failure to turnover these monies and Plaintiffs will suffer further damage as Torres/FTC continue to spend these funds.

## SEVENTH CAUSE OF ACTION

### (Conversion against Torres/FTC)

88.     Plaintiffs repeat and reallege paragraphs 1 – 87 above and incorporate those paragraphs herein.

89.     Plaintiffs have title to and superior right to possession of the valuable LaChapelle Works currently held by Torres/FTC in various storage facilities in New York City and elsewhere.

90.     Since the termination of the business relationship between the parties, Torres/FTC have no right of possession in any such work.

91.     Nevertheless, Torres/FTC continue to retain possession and/or exclusive control over hundreds of valuable art works including one-of-a-kind, original artwork.

92.     Torres/FTC have deliberately secreted those artworks from Plaintiffs, thereby interfering with Plaintiffs' title and right to possession.

93.     Plaintiffs have made multiple requests for return of the artworks. Torres/FTC have failed and refused to comply with Plaintiffs' requests.

94.     As a direct and proximate result of said conduct, Plaintiffs have been deprived of access to and use of artwork that is essential to their business. Plaintiffs have expended time and money in an effort to recover their property, to continue operations, and to repair the damaged relationships caused by Torres/FTC's misconduct.

95.     Torres/FTC's conduct was done with the knowledge that they would deprive Plaintiffs of access to and use of their rightful property. Torres/FTC's acts were therefore willful, wanton, malicious and oppressive and justify an award of punitive damages.

## EIGHTH CAUSE OF ACTION

### (Trespass to Chattels Against Torres/FTC)

96.     Plaintiffs repeat and reallege paragraphs 1 – 95 above and incorporate those paragraphs herein.

97.     Plaintiffs have title to and superior right to possession of the valuable LaChapelle Works currently held by Torres/FTC in various storage facilities in New York City.

98.     Since the termination of the business relationship between the parties, Plaintiffs have made demands for the return of these works.  However, Torres/FTC have intentionally ignored these demands and continue to retain possession and/or exclusive control over hundreds of valuable art works.

99.     As a direct and proximate result of said conduct, Plaintiffs have been deprived of access to and use of artwork that is essential to their business.  Plaintiffs have expended time and money in an effort to recover their property, to continue operations, and to repair the damaged relationships caused by Torres/FTC's misconduct.

100.     Torres/FTC's conduct was done with the knowledge that they would deprive Plaintiffs of access to and use of their rightful property.  Torres/FTC's acts were willful, wanton, malicious and oppressive and justify an award of punitive damages.

## NINTH CAUSE OF ACTION

### (Breach of Bailment Agreement Against Torres/FTC)

101.     Plaintiffs repeat and reallege paragraphs 1 - 100 above and incorporate those paragraphs herein.

102.     Plaintiffs and Torres/FTC intended to enter a bailment relationship with regard to Plaintiffs' works.

103.     Plaintiffs delivered each of the works to Torres/FTC in furtherance of the bailment relationship.

104.     Torres/FTC accepted possession of the works.

105.    Torres/FTC now refuses to comply with Plaintiffs' demands for the return of the works and continues to assert possession and control over the works.  Such refusal to return Plaintiffs' property is willful, wanton, malicious and oppressive and justifies an award of punitive damages.

106.    Plaintiffs have been injured as a result of Torres/FTC's wrongful actions. Plaintiffs have been deprived of access to and use of artwork that is essential to their business.

## TENTH CAUSE OF ACTION

### (Replevin against Torres/FTC)

107.    Plaintiffs repeat and reallege paragraphs 1 – 106 above and incorporate those paragraphs herein.

108.    Plaintiffs are, and continue to be, the sole legal owners of the LaChapelle Works identified in the document attached hereto as "Exhibit E".  On information and belief, Plaintiffs are also the sole legal owners of all the works identified by Torres/FTC in "Exhibit A" of their March 26, 2013 to Plaintiffs' counsel.  There is no other person or entity with a superior right to, or possessory interest in the LaChapelle Works or in the works identified in Torres/FTC's "Exhibit A.".

109.    Torres/FTC rightfully obtained possession of these works during their tenure as Plaintiffs' agent.  Since the termination of the agency relationship, Torres/FTC have wrongfully retained possession of the works.

110.    Despite Plaintiffs making numerous demands for the return of their works, Torres/FTC continue to exercise an unauthorized dominion over the works and refuse to return them.

111.    As a direct and proximate result of said conduct, Plaintiffs have been deprived of access to and use of artwork that is essential to their business.  Plaintiffs have expended time and money in an effort to recover their property, to continue operations, and to repair the damaged relationships caused by Torres/FTC's misconduct.

112.    Torres/FTC's conduct was done with the knowledge that they would deprive Plaintiffs of access to and use of their rightful property. Torres/FTC's' acts were therefore willful, wanton, malicious and oppressive and justify an award of punitive damages.

## ELEVENTH CAUSE OF ACTION

### (Breach of Contract by  LaChapelle against Torres)

113.    Plaintiffs repeat and reallege paragraphs 1 - 112 above and incorporate those paragraphs herein.

114.    On August 23, 2011, Torres borrowed $550,000.00 from LaChapelle.  The loan is memorialized by a promissory note (the "Second Promissory Note"), a copy of which is attached hereto as "Exhibit F" and incorporated herein.

115.    Under the terms of the Second Promissory Note, Torres is required to repay LaChapelle 6,000.00 per month commencing August 1, 2011 until March 1, 2019, with a final payment of $4,000.00 on April 1, 2019.

116.    As of this date, Torres has failed to make timely payments on the Second Promissory Note. LaChapelle has demanded that the  Second Promissory Note be paid in accordance with its terms.

117.    As a result of Torres' material breach of the terms of the Second Promissory Note, LaChapelle has suffered financial damage plus interest thereon.

## TWELFTH CAUSE OF ACTION

### (Tortious Interference With Business Relations against All Defendants)

118.　Plaintiffs repeat and reallege paragraphs 1 - 117 above and incorporate those paragraphs herein.

119.　Plaintiffs have longstanding, beneficial business relationships with numerous galleries, curators, and vendors, including fine art transportation specialists. These relationships enable Plaintiffs to continue to exhibit, consign and sell David LaChapelle artworks worldwide.

120.　On or around March 7, 2013, Defendants – including Parmenter -- interfered with these relationships by falsely representing that they had legal authority to demand the "return of LaChapelle artwork." Defendants had no ownership or possessory interest in the artwork. Nor did Defendants have authority to conduct business as Plaintiffs' agents. When third parties failed to comply with defendants' demands for the artwork, Defendants threatened to take legal action against them. On March 14, 2013, Defendants further falsely represented to third parties in lawful possession of LaChapelle artwork that "the Court has already decided" that all LaChapelle works were to be delivered to FTC, and that the "court case has already settled in Fred Torres' favor." FTC/Torres subsequently brought suit against this third party, one of Plaintiffs' gallery clients,  and Plaintiffs' fine art shipping company, for refusing to comply with their demands for the art work.

121.　Defendants' conduct is willful, wrongful and malicious, and was done solely to damage Plaintiffs' existing and future business relationship with these specific entities and with the art world as a whole.

122.　As a direct and proximate result of defendants' misconduct, Plaintiffs have been deprived of possession of the artwork. They have been forced to incur the expense of re-fabrication, storage fees and other expenses. They have been forced to hire attorneys and incur costs in an attempt to recover possession of their property.

## THIRTEENTH CAUSE OF ACTION

### (Alter Ego Liability against Torres/FTC)

123.    Plaintiffs repeat and reallege paragraphs 1 - 122 above and incorporate those paragraphs herein.

124.    Torres and FTC's assets and business identities have been so merged and intermingled together that they are alter egos of each other.

125.    As such, Torres and FTC are each liable for the actions, obligations, and debts of one and other.

## FOURTEENTH CAUSE OF ACTION

### (Fraud against Torres/FTC)

126.    Plaintiffs repeat and reallege paragraphs 1 - 125 above and incorporate those paragraphs herein.

127.    When, on or about April 30, 2012, Torres/FTC promised to pay to Plaintiffs $30,000.00 each month to reduce its $1,092,110.00 debt to Plaintiffs, and further promised to abide by the parties' agreement that Torres/FTC 's share of revenue from art sales would be remitted within 30 days of Torres/FTC receipt of payment in full, they intended to induce Plaintiffs' reliance on those promises.  Specifically, it intended to induce Plaintiffs to refrain from taking legal action on the debt and to continue to use Torres/FTC as their manager and agent.

128.    Plaintiffs reasonably relied on Torres/FTC's promises.  Plaintiffs' reliance was reasonable in that the parties had a long and apparently mutually advantageous working relationship, because it was unaware of Torres/FTC's acts of mismanagement and because it was unaware of Torres/FTC's financial condition. Plaintiffs did not, at that time, take action on the

debt or terminate Torres/FTC.  Had Plaintiffs known the true facts, they would have terminated

Torres/FTC at once and would have brought suit for damages.

129.    At the time Torres/FTC made the promises in question, it had no intent of

performing them.

130.    As a direct and proximate result of Torres/FTC's intentional misrepresentation,

Plaintiffs suffered damages in an amount to be proven at trial.

### FIFTEENTH CAUSE OF ACTION

### (Promissory Estoppel against Torres/FTC)

131.    Plaintiffs repeat and reallege paragraphs 1 - 130 above and incorporate those

paragraphs herein.

132.    When, on or about April 30, 2012, Torres/FTC promised to pay to Plaintiffs

$30,000.00 each month to reduce its $1,092,110.00 debt to Plaintiffs, and further promised to

abide by the parties' agreement that Plaintiffs' share of revenue from art sales would be remitted

within 30 days of Torres/FTC's receipt of payment in full.  In return, Plaintiffs' promised to

refrain from taking legal action on the debt and to continue to use Torres/FTC as their manager

and agent.

133.    The promises made by Torres/FTC to Plaintiffs were clear and unambiguous in

their terms.

134.    Plaintiffs relied on Torres/FTC's promises and both continued to use Torres/FTC

as their manager and agent and refrained from taking legal action to recover the debt.

135.    Plaintiffs' reliance on Torres/FTC's promises was reasonable and foreseeable

given that the parties had a long and apparently mutually advantageous working relationship,

136.   As a direct and proximate result of Torres/FTC's intentional misrepresentation, Plaintiffs suffered damages in an amount to be proven at trial.

## SIXTEENTH CAUSE OF ACTION

### (Violation of New York Arts and Cultural Affairs Law § 12.01 against Torres/FTC)

137.   Plaintiffs repeat and reallege paragraphs 1 - 136 above and incorporate those paragraphs herein.

138.   Torres/FTC's conduct as alleged hereinabove, violated their fiduciary duty to Plaintiffs as defined in Arts and Cultural Affairs Law § 12.01 (1995 amendment). Torres/FTC's violations include, but are not limited to, failing to account for Plaintiffs' works when demanded, failing to account for trust funds when demanded, failing to turn over trust property when demanded, failing to pay over trust property when demanded, converting trust property and trust funds to their own use and for their own profit, and interfering with Plaintiffs' rightful possession of their works and funds, all of which is deemed by statute to be trust property held in statutory trust.

139.   As a direct and proximate result of Torres/FTC's violations, Plaintiffs have been damaged in sums in excess of the jurisdictional minimum of this Court and to be proven at trial.

## SEVENTEENTH CAUSE OF ACTION

### (Violation of Estate, Powers & Trusts Law § 11-1.6 against Torres/FTC)

140.   Plaintiffs repeat and reallege paragraphs 1 - 139 above and incorporate those paragraphs herein.

141.   Torres/FTC's conduct as alleged hereinabove, violated their fiduciary duty to Plaintiffs as defined in Estates, Powers & Trusts Law §11-1.6. The violations include, comingling the trust property with their own property, converting trust property and trust funds to their own use and for their own profit, and holding the trust property in their own names.

142.    As a direct and proximate result of said violations, Plaintiffs have been damaged in sums in excess of the jurisdictional minimum of this Court and to be proven at trial.

143.    Further, for violating the statute, Torres/FTC are guilty of a misdemeanor.

## EIGHTEENTH CAUSE OF ACTION

## (Violation of United States Copyright Law §106 by LaChapelle against Torres/FTC)

144.    Plaintiffs repeat and reallege paragraphs 1 - 143 above and incorporate those paragraphs herein.

145.    LaChapelle is the exclusive owner of all copyrights in the following works of visual art: *Wilting Gossip, Early Fall, The Lovers, Flaccid Passion, Risk, Deathless Winter, Concerning the Soul, America, Springtime*, and *Late Summer* (collectively "Copyrighted Works"). Each of these Copyrighted Works is the subject of a valid Certificate of Copyright Registration issued by the Register of Copyrights. True and correct copies of the Certificate of Copyright Registrations are attached hereto as "Exhibit G."

146.    Plaintiffs maintained a computer data-base which contained, inter alia, digital versions of LaChapelle's copyrighted work. Pursuant to, and solely as a result of, their agency relationship with Plaintiffs, Torres/FTC had access to the data-base and had the ability to use digital files to reproduce LaChapelle's artwork for Plaintiffs' benefit. E.g., Torres/FTC had limited authority to reproduce artwork to fill sales orders, create exhibition prints and provide prints to consignees, all of which activities benefited Plaintiffs. However, Torres/FTC were not authorized to reproduce or distribute LaChapelle's images for their own benefit or for purposes outside the scope of the artist/agent relationship.

147.    In or about 2011, unbeknown to LaChapelle and without LaChapelle's consent or ratification, Torres/FTC accessed the database, retrieved digital images of the above-listed art works and made exact copies of those works for their own use. Torres/FTC then distributed some, perhaps all, of said copies to third parties, including but not limited to their Big Fork

Gallery in Montana. LaChapelle are informed and believe that Torres/FTC derived profits and other benefits from their nonconsensual copying and distribution of Plaintiffs' artwork.

148.     LaChapelle discovered Torres/FTC's unauthorized use of the copyrighted digital images when they examined the database in January of 2013 -- following the termination of Torres/FTC's agency. Prior to the termination of the agency, LaChapelle relied on the fiduciary duties owed to them by Torres/FTC and had no reasonable basis to believe that Torres/FTC misappropriating LaChapelle's images for their own use and to plaintiffs' detriment.

149.     As a direct and proximate result of the infringing conduct, and in violation of plaintiffs' exclusive rights under 17 U.S.C. 106, LaChapelle have suffered and will continue to suffer injuries and damages. He is entitled to damages permitted by Copyright law, including compensatory damages and the profits derived by Torres/FTC as a result of their infringing acts.

150.     Under 17 U.S.C. § 106(1) & (3) of the United States Copyright Act, LaChapelle has the exclusive rights to reproduce the Copyrighted Works and distribute them to the public.

151.     The foregoing acts of infringement by Torres/FTC were willful, wanton, malicious, and oppressive and justify an award of punitive damages.

152.     Additionally, actual damages, including, but not limited to, actual lost sales, prospective lost sales, and confusion caused by the infringements.

**WHEREFORE**, Plaintiffs David LaChapelle and David LaChapelle Studios, Inc. pray judgment as follows:

A.     On the First Cause of Action for Violation of the Lanham Trademark

Act, Sec. 43(a):

•     That Torres/FTC and their agents, servants, employees, attorneys and other persons in active concert with them: (1) be restrained and enjoined from using, affixing, offering for sale, advertising or promoting its services by using the David LaChapelle name; (2) be restrained and enjoined from holding itself out

as Plaintiffs' manager, agent or representative; (3) be ordered to remove from its website and all other public media in its control the false representation that David LaChapelle is Torres/FTC' client; (4) Within thirty (30) days of service of any Orders relating to the use of the LaChapelle name, Torres/FTC be ordered to report to the Court, in writing, setting forth in detail the manner in which Torres/FTC have complied with the Order;

- That the Court award to Plaintiffs damages in an amount equal to the profits of the Torres/FTC, and the damages sustained by Plaintiffs as a result of Torres/FTC' wrongful conduct;

- That, because of the willful nature of Torres/FTC's acts, the Court enter a judgment for treble the amount of the aforesaid damages;

- That Torres/FTC be required to pay Plaintiffs their costs in this action, including reasonable attorney's fees; and

- For such other and further relief that the Court deems just and proper.

B.   On the Second Cause of Action for Breach of Contract:

- An award of the sums owed to Plaintiffs pursuant to the parties' agreement;

- An award of interest thereon at a rate of 10% per annum;

- An award of costs of suit incurred herein; and

- For such other and further relief that the Court deems just and proper.

C.   On the Third Cause of Action for Unjust Enrichment:

- An award of actual and compensatory damages in an amount to be determined at trial;

32

- An award of costs of suit herein; and

- For such other and further relief that the Court deems just and proper.

D.    <u>On the Fourth Cause of Action for Breach of Fiduciary Duty:</u>

- An award of actual and compensatory damages in an amount to be determined at trial;

- An award of exemplary and punitive damages;

- An award of costs of suit herein; and

- For such other and further relief that the Court deems just and proper.

E.    <u>On the Fifth Cause of Action for Accounting:</u>

- An Order for Accounting;

- An award of costs of suit herein; and

- For such other and further relief that the Court deems just and proper.

F.    <u>On the Sixth Cause of Action for Money Had and Received:</u>

- An award of the sums that are rightly owed to or belong to Plaintiffs;

- An award of costs of suit herein; and

- For such other and further relief that the Court deems just and proper.

G.    <u>On the Seventh Cause of Action for Conversion:</u>

- Injunctive Relief: That Torres/FTC and their agents, servants, employees, attorneys and other persons in active concert with Torres/FTC: (1) be compelled to return to Plaintiffs the art works described herein and any other LaChapelle artworks in their possession and/or control by virtue of the Artist/Agent relationship; (2) be compelled to give Plaintiffs immediate access to the LaChapelle artworks in Torres/FTC's possession and/or control by virtue of the

Artist/Agent relationship; (3) that, within 30 days of service of any Orders relating to the release or return of the LaChapelle artworks, Torres/FTC be ordered to report to the Court, in writing, setting forth in detail the manner in which Torres/FTC has complied with the Order;

- An award of actual and compensatory damages in an amount to be determined at trial;

- An award of exemplary and punitive damages;

- An award of costs of suit herein; and

- For such other and further relief that the Court deems just and proper.

H.   <u>On the Eighth Cause of Action for Trespass to Chattels</u>

- An award of actual and compensatory damages in an amount to be determined at trial;

- An award of exemplary and punitive damages;

- An award of costs of suit herein; and

- For such other and further relief that the Court deems just and proper.

I.   <u>On the Ninth Cause of Action for Breach of Bailment Agreement:</u>

- An award of actual and compensatory damages in an amount to be determined at trial;

- An award of exemplary and punitive damages;

- An award of costs of suit herein; and

- For such other and further relief that the Court deems just and proper.

J.   <u>On the Tenth Cause of Action for Replevin:</u>

- Injunctive Relief: That Torres/FTC and their agents, servants, employees, attorneys and other persons in active concert with Torres/FTC: (1) be compelled to return to Plaintiffs the art works described herein and any other LaChapelle artworks in their possession and/or control by virtue of the Artist/Agent relationship; (2) be compelled to give Plaintiffs immediate access to the LaChapelle artworks in Torres/FTC's possession and/or control by virtue of the Artist/Agent relationship; (3) that, within 30 days of service of any Orders relating to the release or return of the LaChapelle artworks, Torres/FTC be ordered to report to the Court, in writing, setting forth in detail the manner in which Torres/FTC has complied with the Order;

- An award of actual and compensatory damages in an amount to be determined at trial;

- An award of exemplary and punitive damages;

- An award of costs of suit herein; and

- For such other and further relief that the Court deems just and proper.

K.   <u>On the Twelfth Cause of Action for Breach of Contract:</u>

- An award of the sums owed to LaChapelle pursuant to the Second Promissory Note;

- An award of interest thereon at a rate of 10% per annum;

- An award of costs of suit incurred herein; and

- For such other and further relief that the Court deems just and proper.

L.    On the Thirteenth Cause of Action for Tortious Interference with Business Relations)

- An award of actual and compensatory damages in an amount to be determined at trial;

- An award of exemplary and punitive damages;

- An award of costs of suit herein; and

- For such other and further relief that the Court deems just and proper.

M.    On the Fourteenth Cause of Action for Alter Ego Liability:

- A declaratory judgment that Torres and FTC are the alter egos of each other and are each liable for the actions, obligations, and debts of one and other.

N.    On the Fifteenth Cause of Action for Fraud:

- An award of actual and compensatory damages in an amount to be determined at trial;

- An award of exemplary and punitive damages;

- An award of costs of suit herein; and

- For such other and further relief that the Court deems just and proper.

O.    On the Sixteenth Cause of Promissory Estoppel:

- An award of actual and compensatory damages in an amount to be determined at trial;

- An award of costs of suit herein; and

- For such other and further relief that the Court deems just and proper.

P.   <u>On the Seventeenth Cause of Action for Violation of New York Arts and Cultural Affairs Law § 12.01:</u>

- An award of actual and compensatory damages in an amount to be determined at trial;

- An award of costs of suit herein; and

- For such other and further relief that the Court deems just and proper.

Q.   <u>On the Eighteenth Cause of Action for Violation of Estate, Powers & Trusts Law § 11-1.6:</u>

- An award of actual and compensatory damages in an amount to be determined at trial;

- An award of costs of suit herein;

- For declaratory finding that Torres/FTC have violated Estate, Powers & Trusts Law § 11-1.6 and are guilty of a misdemeanor; and

- For such other and further relief that the Court deems just and proper.

R.   <u>On the Nineteenth Cause of Action for Violation of United States Copyright Law §106</u>

- An award of actual damages in an amount to be determined at trial;

- An award of costs of suit herein;

- An award of common law exemplary and punitive damages; and

- For such other and further relief that the Court deems just and proper.

Dated: April 4, 2013

Respectfully submitted,

Wilk Auslander
1515 Broadway, 43rd Floor
New York, NY 10036

By: _Isl Stuart M. Riback_
   Stuart M. Riback (SMR 2443)

Brownstein Hyatt Farber Schreck, LLP
2029 Century Park East, Suite 2100
Los Angeles, CA 90067-3007
310.500.4600

By: _Isl_
   Deborah Drooz
   (*APPEARING PRO HAC VICE*)

*Attorneys for Plaintiff*
*David LaChapelle and*
*David LaChapelle Studio, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID LACHAPELLE, an individual, and DAVID LACHAPELLE STUDIOS, INC. a New York Corporation,<br><br>    Plaintiffs,<br><br>    -against-<br><br>FRED TORRES, an individual d/b/a FRED TORRES COLLABORATIONS and FINE ART ACCOUNT, INC, a corporation d/b/a FRED TORRES COLLABORATIONS, JAMES PARMENTER, an individual,<br><br>    Defendant. | CASE NO.<br><br><br><br><br>**JURY DEMAND** |

   Plaintiffs David LaChapelle and David LaChapelle Studios, Inc., hereby request a trial by

jury on each of their claims.

Dated: April 4, 2013

         Respectfully submitted,

         Wilk Auslander
         1515 Broadway. 43rd Floor
         New York, NY 10036

         By: _____ /s/ _____
           Eric B. LaMons

         Brownstein Hyatt Farber Schreck, LLP
         2029 Century Park East, Suite 2100
         Los Angeles, CA  90067-3007
         310.500.4600

         By: _____ /s/ _____
           Deborah Drooz (*PRO HAC VICE*)

         *Attorneys for Plaintiff*
         *David LaChapelle and*
         *David LaChapelle Studio, Inc.*