UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------------------X
                                                    :
DAVID LACHAPELLE, an individual, and DAVID          :
LACHAPELLE STUDIOS, INC., a New York Corporation,   :
                                   Plaintiffs,      :
                                                    :
                 -against-                          :
                                                    :
FRED TORRES, an individual d/b/a FRED TORRES        :
COLLABORATIONS and FINE ART ACCOUNT, INC., a        :
corporation d/b/a FRED TORRES COLLABORATIONS, and   :
JAMES PARMENTER, an individual,                     :
                                   Defendant.       :
                                                    :
------------------------------------------------------------------------X
                                                    :
FINE ART ACCOUNT, INC., a New York Corporation d/b/a :
FRED TORRES COLLABORATIONS and FRED TORRES,         :
                          Counterclaimants and      :
                          Third-Party Plaintiffs,   :
                                                    :
                 -against-                          :
                                                    :
DAVID LACHAPELLE and DAVID LACHAPELLE               :
STUDIOS, INC., a New York Corporation, GHRETTA      :
HYND, KUMI TANIMURA, MICHAEL MOCKLER,               :
KENDRA DACEY, VICKIE ARNDT, MICHELLE LEEDY,         :
SIMONE ZUCHARELLO, PAUL KASMIN GALLERY,             :
INC., RACINE BERKOW ASSOCIATES, INC., a New York    :
Corporation, and MICHAEL ANDERSON,                  :
                                                    :
                          Counterclaim and Third-   :
                          Party Defendants.         :
------------------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_____8/7/2014_____

12-CV-9362 (VEC)

OPINION & ORDER

VALERIE CAPRONI, District Judge:

This lawsuit, arising from the acrimonious demise of the relationship between an artist,

Plaintiff David LaChapelle, and his agent, Defendant Fred Torres, was commenced on December

21, 2012.  As the case currently stands after three amended complaints, LaChapelle and David

LaChapelle Studios, Inc. ("DLC Studios") have claims against Torres and Fine Art Account,

Inc., doing business as Fred Torres Collaborations ("FTC"), for violations of the Lanham Act, 15 U.S.C. § 1125(a), and the Copyright Act, 17 U.S.C. § 106.  Plaintiffs also have alleged a multitude of state statutory and common law claims against Defendants.  Defendants have responded in kind and have asserted similar state law counterclaims against Plaintiffs. Defendants have also brought third-party state law claims against an art gallery, an art transporter, and numerous individuals.[1]  The gallery has counterclaimed with state law claims against Defendants, and the transporter has asserted an interpleader claim regarding LaChapelle artwork in its possession.[2]

To make the case seem even more like a civil procedure law school hypothetical, on May 8, 2013, Plaintiffs moved to attach the proceeds from Torres's sale of an apartment in Manhattan in an amount up to $493,422.00.  *LaChapelle v. Torres*, No. 12-CV-9362 (S.D.N.Y. May 8, 2013) (ECF No. 58).  Plaintiffs posted a bond and an order of attachment was entered. *LaChapelle v. Torres*, No. 12-CV-9362 (S.D.N.Y. July 18, 2013) (ECF No. 113).  That order was premised upon Plaintiffs' breach of contract claim relating to a $550,000 promissory note between Torres and LaChapelle.

This case was reassigned to this Court on March 10, 2014.  On April 3, 2014, the Court *sua sponte* directed the proponents of any state law claim to describe by letter the basis for supplemental jurisdiction over that claim.  After hearing from the parties, the Court issued an order to show cause directing the parties to address the existence of supplemental jurisdiction

---

[1]     The art gallery is Paul Kasmin Gallery ("Kasmin Gallery") and the art transporter is Racine Berkow Associates, Inc. ("RBA").  The individuals named include former employees of Defendants, some of whom are now employed by Plaintiffs, DLC Studios Chief Financial Officer Ghretta Hynd, and DLC Studios manager Kumi Tanimura.  The remaining individuals are Michael Mockler, Kendra Dacey, Vickie Arndt, Michelle Leedy, Simone Zucharello, and Michael Anderson.

[2]     Claims involving RBA's possession of LaChapelle artwork are not the subject of this order.

over certain of the state law claims.  A show cause hearing was held on June 6, 2014, after which Plaintiffs submitted supplemental briefing.

The following claims are DISMISSED for lack of subject-matter jurisdiction:  (1) Plaintiffs' Eleventh, Twelfth, Fourteenth, Fifteenth, and Nineteenth Causes of Action for breach of contract related to two promissory notes and numerous other torts; (2) Defendants' claims against Plaintiffs for repayment of personal expenses (Counterclaim ¶ 86); (3) Defendants' Eleventh, Fourteenth, and Sixteenth Causes of Action for money had and received, tortious interference, and unfair competition; (4) Defendants' Ninth, Tenth, Twelfth, and Fifteenth Causes of Action for conversion, replevin, trespass to chattels, and prima facie tort, except to the extent that any of these claims involve the theft or possession of LaChapelle artwork; (5) Defendants' Fifth, Sixth, Seventh, Eighth, and Eighteenth Causes of Action (Cause of Action 18 as against Kasmin Gallery only) for breach of contract, promissory estoppel, quantum meruit, unjust enrichment, and account stated; and (6) Kasmin Gallery's third-party counterclaims against Defendants in their entirety.  Plaintiffs' application for a stay of dismissal of these claims is DENIED.  Further, the order of attachment entered on July 18, 2013 (ECF No. 113) is VACATED.

## FACTUAL BACKGROUND

As noted above, multiple parties bring a plethora of state law claims against numerous defendants.  The Court will focus on only those facts relevant to Plaintiffs' federal claims and to the claims subject to dismissal for lack of subject-matter jurisdiction.  With that limitation in mind, the relevant facts begin in late 2005 when LaChapelle retained Torres as his agent and manager.  As LaChapelle's manager, Torres's duties included "contracting with third party artisans (including printers and framers) for the fabrication of LaChapelle's artwork."  (Third Am Compl. ¶ 15.)  Through the fabrication process, physical prints of LaChapelle's photographs

3

were generated for sale, consignment, or exhibition.  The parties' agreement provided that Torres was responsible for fabrication costs and that a certain percentage of the "retail sales price" was to be remitted to LaChapelle following each sale.  (*Id.* ¶ 18.)  Torres was entitled to retain the balance of the purchase price that he negotiated with buyers.  During the course of their relationship, Torres arranged a number of exhibitions of LaChapelle work, including at least one exhibition at Kasmin Gallery.

On November 15, 2012, LaChapelle terminated his business relationship with Torres for "material breach of the parties' agreement."  (*Id.* ¶ 33.)

## A.  Plaintiffs' Claims[3]

### 1.  Federal Claims

Defendants' alleged violation of the parties' agreement forms the basis for Plaintiffs' federal copyright claim.  Under their agreement, Defendants had "limited authority to reproduce artwork to fill sales orders, create exhibition prints and provide prints to consignees" for Plaintiffs' benefit.  (*Id.* ¶ 146.)  But Defendants "were not authorized to reproduce or distribute LaChapelle's images for their own benefit or for purposes outside the scope of the artist/agent relationship."  (*Id.*)  Plaintiffs cite specific instances of copies made "[i]n or about 2011 . . . without LaChapelle's consent or ratification . . . [and] for [Defendants'] own use."  (*Id.* ¶ 147.)  These unauthorized fabrications included copies of ten specific works in which Plaintiffs claim an exclusive copyright.  (*Id.* ¶¶ 145, 147.)  Defendants provided "some, perhaps all, of [those] copies to third parties, including but not limited to" a gallery in Montana for an exhibition.  (*Id.* ¶¶ 60, 147.)

---

[3]     Unless otherwise stated, the facts underlying each of the claims discussed here are taken from the pleading of the claim's proponent.

Plaintiffs also contend that after the relationship was terminated, Defendants continued to hold themselves out as Plaintiffs' representatives in violation of federal trademark law.  Plaintiffs have "sold and exhibited artwork under the LaChapelle name all over the world since 1995." (*Id.* ¶ 45.)  The name is thus "associated with a body of commercially valuable and aesthetically desirable artwork."  (*Id.*)  Upon Defendants' termination, Plaintiffs "demanded that [Defendants] cease and desist in exploiting LaChapelle's work and holding themselves out to the public as Plaintiffs' representatives."  (*Id.* ¶¶ 42, 52.)  Despite that demand, Defendants continued to list LaChapelle as a "Collaborations Artist" and to display LaChapelle exhibition catalogs for sale on the FTC website.  Moreover, Defendants also offered LaChapelle works for sale and otherwise continued to claim on third-party websites that Torres represented LaChapelle.  (*Id.* ¶ 51.) Defendants also falsely held themselves out as LaChapelle's representatives to promote an exhibit of LaChapelle's work that Defendants had arranged in Montana.  (*Id.* ¶ 61.)  These false representations allegedly "enhanced [Defendants'] status in the art world" because LaChapelle had been the most "renowned and respected" of Defendants' clients.  (*Id.* ¶ 55.)  According to Plaintiffs, Defendants' misrepresentations "divert[ed] business" from LaChapelle to Torres and tarnished LaChapelle's reputation among consumers.  (*Id.* ¶¶ 56–59.)  Defendants thus "wrongfully benefited [from] confusion in the marketplace as to [Defendants'] representation of LaChapelle."  (*Id.* ¶ 63.)

### 2. State Law Claims

Plaintiffs also bring claims arising under state law regarding various other aspects of the parties' relationship.  For example, on two occasions in 2011 Torres borrowed substantial sums from LaChapelle.  (*Id.* ¶ 114–117, 154–157 & Ex. F.)  Plaintiffs allege that Torres failed to repay these loans.  (*Id.* ¶¶ 116, 156.)

These loans were not the only signs of financial trouble during the parties' relationship. According to LaChapelle, in November 2011 Torres breached the "established protocol" governing their business relationship.  (*Id.* ¶ 26.)  Citing cash flow problems, Torres failed to pay LaChapelle his share of sales Torres had made over a period of months.  And on April 30, 2012, recognizing the large debt he owed to LaChapelle and "to induce Plaintiffs to refrain from taking legal action on the debt and to continue to use Torres/FTC as their manager and agent," Torres promised to pay Plaintiffs $30,000 per month.  (*Id.* ¶¶ 127, 132.)

According to Plaintiffs, after this litigation began, Torres and FTC continued to represent to third parties that they "had the authority to possess, and direct, the disposition of [LaChapelle] exhibition prints in third parties' lawful custody."  (*Id.* ¶ 43.)  In particular, in March 2013, after having been terminated as LaChapelle's agent, Defendants demanded that "numerous galleries, curators, and vendors, including fine art transportation specialists" return LaChapelle artwork to Torres and FTC.  (*Id.* ¶¶ 119–120.)

**B. Defendants' Claims**

In response to these claims, Defendants bring a number of counterclaims against Plaintiffs, as well as third-party claims against Plaintiffs' employees, former FTC employees, and Kasmin Gallery.  Defendants also contend that they are "entitled to an offset and/or recoupment in an amount which exceeds the amounts allegedly owed to plaintiffs by defendants."  (Affirmative Defenses ¶ 16.)

According to Defendants, Torres, as LaChapelle's agent, was responsible for "actual fabrication" of LaChapelle's work.  (Counterclaims ¶ 23.)  Defendants were entitled to recoup the costs of fabrication upon the sale of any prints.  (*Id.* ¶ 28.)  Defendants represented to the Court that the total amount owed for fabrication costs was $874,360.36.  (Defs.' Opp'n to Pls.'

Mot. to Modify, ECF No. 201, at 4.)  According to Defendants, Plaintiffs are responsible for these costs.  (*Id.* ¶ 31.)[4]

Defendants also contend that Plaintiffs owe them unpaid commissions and expense reimbursements in connection with a 2007 sale and an exhibition that concluded on March 3, 2013.  (Counterclaim ¶¶ 38–43.)  Defendants also seek additional commissions for exhibitions they arranged while still retained as Plaintiffs' agent but that were scheduled to take place after Defendants were terminated.  (*Id.* ¶¶ 44–47.)

Defendants complain that Plaintiffs, their agents, and former employees of FTC engaged in corporate espionage.  In the course of representing LaChapelle, Defendants had gathered information regarding potential customers for LaChapelle works.  (*Id.* ¶¶ 27–30.)  Plaintiffs and Ghretta Hynd (DLC Studios' Chief Financial Officer) allegedly stole customer lists and other confidential information by surreptitiously recruiting virtually all of FTC's employees and by encouraging them to collect confidential information while still working for Defendants. (*Id.* ¶¶ 52–53, 56–57.)

At Plaintiffs' and Hynd's behest, third-party defendant Michael Anderson, who was FTC Operations Director and Torres's former financial advisor, allegedly transmitted to Plaintiffs "confidential financial information," as well as attorney-client privileged communications belonging to Defendants.  (*Id.* ¶¶ 12, 58.)

---

[4]     Defendants asserted an artisan's lien on LaChapelle artwork that he held.  On Plaintiffs' motion, the Court modified a previously-entered preliminary injunction to require Defendants to return the artwork in which Defendants did not claim any ownership interest, contingent upon the posting of an $874,360.36 bond.  *See Licensing Servs. Int'l v. Howe Chem. Co.*, No. CV-93-2556, 1995 WL 744996, at *1 (E.D.N.Y. Dec. 6, 1995) ("While [Plaintiff] may have an artisan's lien on the tapes . . . , [Defendant's] posting of an undertaking discharges any lien [Plaintiff] may have." (citing *Angelika Films, Inc. v. Urban Entm't Assocs., Inc.*, 530 N.Y.S.2d 979 (Sup. Ct. 1988)); *People v. Ayala*, 557 N.Y.S.2d 236, 237 (Sup. Ct. 1990) (artisan's lien "lasts as long as the chattel is in the lienor's possession, unless substitution of surety is permitted").  That bond was posted on June 25, 2014.

In addition to these thefts, according to Defendants, in early November 2012 just before Torres's termination, Plaintiffs began contacting Defendants' customers to divert to Plaintiffs payments owed to Defendants.  (*Id.* ¶ 60.)  These communications were made "with the specific intent of interfering with [Defendants'] relationship with its other artists and thus destroying [Defendants'] ability to conduct business."  (*Id.* ¶ 63.)  Further, Plaintiffs "attempted to convince customers not to do business with FTC but only with LaChapelle directly" and otherwise informed customers that Defendants were arrears in their payments to Plaintiffs.  (*Id.* ¶¶ 62–63.) Plaintiffs' termination of Defendants occurred without the "90 days advance notice of any termination" required by the parties' initial agreement.  (*Id.* ¶ 65.)

Defendants also assert that they are owed "between $350,000-$500,000 for personal expenses that were fronted on behalf of LaChapelle for which it was agreed that [Defendants] would be reimbursed." (*Id.* ¶ 72 (emphasis omitted).)  These expenses included the cost of food, toiletries, transportation, "construction, repair and decoration of LaChapelle's apartment," and "personal assistants."  (*Id.*)

Finally, Defendants also contend that third-party defendant Kasmin Gallery owes them "commissions and fees" as well as "fabrication costs" in connection with an exhibition of LaChapelle artwork that Defendants had arranged.  (*Id.* ¶¶ 34, 43, 104–106.)  Kasmin Gallery was also an alleged beneficiary of Defendants' misappropriated customer lists described above. (*Id.* ¶ 55.)  This misappropriation, according to Defendants, created "an unfair commercial advantage" at Defendants' expense.  (*Id.* ¶ 182.)

**C.  Kasmin Gallery's Claims**

Kasmin Gallery, having been brought into this action by the Defendants' crossclaims, asserts several counterclaims against Defendants.  In connection with the exhibition of LaChapelle works described above, Kasmin Gallery advanced $158,000 to Defendants for costs

associated with the exhibition but subsequently learned that the actual costs were less. (Counterclaims of Paul Kasmin Gallery ¶¶ 6–7.)  Kasmin Gallery is suing to recover the difference between its payments and Defendants' actual reimbursable costs.

## DISCUSSION

"[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*.  If subject matter jurisdiction is lacking, the action must be dismissed." *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000). Because complete diversity is lacking, the parties may pursue their state law claims in federal court only if those claims fall within the Court's supplemental jurisdiction.

The permissible scope of the Court's supplemental jurisdiction is set out in 28 U.S.C. § 1367(a):

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

It is undisputed that Plaintiffs' claims under the Copyright Act and the Lanham Act fall within the Court's original jurisdiction.  Supplemental jurisdiction turns on whether those federal claims and the parties' many and varied state claims stem from the "same 'common nucleus of operative fact.'" *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 332 (2d Cir. 2011) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)).  Put differently, the question at hand is whether the relationship between the federal and state claims is "such that the plaintiff 'would ordinarily be expected to try them all in one judicial proceeding.'" *Id.* (quoting *Gibbs*, 383 U.S. at 725).  To make this determination, courts "have traditionally asked whether 'the facts underlying the federal and state claims substantially overlapped . . . [or] the federal claim necessarily brought the facts underlying the state claim before the court." *Achtman v. Kirby,*

*McInerney & Squire LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (alterations in original) (quoting

*Lyndonville Sav. Bank*, 211 F.3d at 704).  Supplemental jurisdiction is lacking "when the federal

and state claims rest[] on essentially unrelated facts."  *Lyndonville Sav. Bank*, 211 F.3d at 704.

Plaintiffs urge that only a "loose factual connection" between a federal and state claim is

necessary to invoke the Court's supplemental jurisdiction.  But that standard has not been

adopted in this Circuit.  *See, e.g.*, *BLT Rest. Grp. LLC v. Tourondel*, 855 F. Supp. 2d 4, 10 n.4

(S.D.N.Y. 2012) ("Given some doubt as to the viability of the 'loose factual connection' standard

in this circuit, we do not rely on it here."); *Rivera v. Ndola Pharmacy Corp.*, 497 F. Supp. 2d

381, 387 n.4 (E.D.N.Y. 2007) (rejecting application of "loose factual connection" standard).  *But*

*see In re Sept. 11th Liability Ins. Coverage Cases*, 333 F. Supp. 2d 111, 116 (S.D.N.Y. 2004)

(endorsing "loose factual connection" standard).  The Second Circuit has observed in dicta that

the "loose factual connection" standard adopted in other courts "appears to be broader than the

*Gibbs* test of 'a common nucleus of operative facts.'"  *Jones v. Ford Motor Credit Co.*, 358 F.3d

205, 213 (2d Cir. 2004).  This Court therefore does not read *Jones* as endorsing the loose factual

connection standard, particularly because the Second Circuit has continued to rely upon *Gibbs*

when discussing the scope of supplemental jurisdiction.  *See Montefiore Med. Ctr.*, 642 F.3d at

332 (citing *Gibbs*, 383 U.S. at 725).  Accordingly, this Court will not apply the loose factual

connection standard that Plaintiffs advocate.[5]

---

[5]      This case is a textbook example of the practical dangers of an overly literal application of the "loose factual connection" standard that other jurisdictions have adopted.  *See, e.g.*, *McCoy v. Iberdrola Renewables*, No. 13-3350, 2014 WL 3703945, at *6 (7th Cir. July 28, 2014) (quoting *Baer v. First Options of Chi., Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995)).  Yet even the courts applying this formulation have not stretched it to the limits sought here.  *Cf. Berg v. BCS Fin. Corp.*, 372 F. Supp. 2d 1080, 1092 (N.D. Ill. 2005) ("[T]he mere fact that claims arise from an employment relationship is, by itself, insufficient to warrant the exercise of supplemental jurisdiction.").

Apparently having pled the case relying on the loose factual connection standard, this case has grown into a Frankenstein monster.  Plaintiffs have alleged every imaginable state claim they might have against Defendants — including many that have no connection to any of the operative facts that underlie the federal claims.  This conglomeration was assembled on the theory that because the state claims all involve, at their core, the soured

Plaintiffs' argument that Defendants' counterclaims expand the Court's supplemental jurisdiction in this case is similarly unavailing.  In that regard, Plaintiffs observe that some of Defendants' state law counterclaims require broad inquiries into the dealings between the parties over the course of their multi-year relationship.  Plaintiffs argue that the Court's supplemental jurisdiction reaches those claims because of an old jurisdictional exception for any "permissive counterclaim . . . in the nature of a set-off interposed merely to defeat or reduce the opposing party's claim and does not seek affirmative relief."  *Jones*, 358 F.3d at 211 n.3.  Plaintiffs and Defendants characterize Defendants' counterclaims as setoffs because, if successful, they may reduce the amount Defendants ultimately owe to Plaintiffs.  Plaintiffs reason that if the Court has supplemental jurisdiction to resolve Defendants' broad state law counterclaims under the setoff exception even though they do not share a common nucleus of operative facts with Plaintiffs' federal claims, then Plaintiffs' similarly broad state law claims must also fall within the Court's supplemental jurisdiction.

---

relationship between an artist and his agent, they are "loosely connected" to the federal claims.  Defendants met Plaintiffs' broad collection of claims with, of course, an equally Frankenstein-like collection of claims against Plaintiffs.  Yet the facts underlying Defendants' claims — which allegedly are all loosely connected to some claim of Plaintiffs — are one step further removed from the common nucleus of operative facts that underlie the federal claims providing this Court's original jurisdiction.

But those two loosely-connected balls of claims are not the end of the case.  Defendants added crossclaims against Kasmin, a gallery that had the misfortune of hosting an exhibition of LaChapelle art at or around the time that LaChapelle terminated his relationship with Torres.  Defendants' claims against Kasmin have nothing to do with Plaintiffs' underlying federal claims against Defendants.  Nevertheless, Defendants contend even these claims are loosely connected and therefore within the Court's supplemental jurisdiction because the gallery exhibited LaChapelle art and because Kasmin Gallery is an alleged beneficiary of confidential business information allegedly stolen from Defendants.  The gallery's claims, which are compulsory counterclaims to Defendants' crossclaims, involve facts that have absolutely no connection to the nucleus of operative facts underlying Plaintiffs' federal causes of action.  If a "loose factual connection" of this kind were sufficient, this Court would have subject-matter jurisdiction to determine a purely state law dispute between nondiverse parties that has no factual connection to any federal claims.  An Article III "case" simply does not stretch that far.  Any other conclusion would contravene the bedrock principle that federal district courts are "courts of limited jurisdiction . . . possess[ing] only that power authorized by Constitution and statute."  *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

Leaving aside whether the assertion of an affirmative defense or counterclaim may expand the scope of an Article III case, Plaintiffs' reasoning rests on the assumption that the setoff exception they describe accurately represents the scope of the Court's supplemental jurisdiction.  It does not.  In support of their theory, Plaintiffs rely on the Second Circuit's opinion in *Jones*.  But far from endorsing a broad setoff exception, the Second Circuit observed that this exception "does not fit squarely within the analytic framework set forth in [*Gibbs*] because under the exception, all defensive set-offs, whether or not they satisfy the *Gibbs* test, are within the ancillary jurisdiction of the court."  *Id.* (quoting *Ambromovage v. United Mine Workers*, 726 F.2d 972, 990–92 & n.56 (3d Cir. 1984)) (internal quotation marks omitted); *see Prudential Equity Grp., LLC v. Ajamie*, 524 F. Supp. 2d 473, 476 (S.D.N.Y. 2007) (declining to apply setoff exception and describing *Jones* as "question[ing] whether the set-off exception, though technically different from supplemental jurisdiction, can be reconciled with the Supreme Court's holding" in *Gibbs*).

Further, with the enactment of 28 U.S.C. § 1367, a limitless setoff exception enjoys even less support.  Such an exception would permit counterclaimants to "plead such an affirmative defense in every case and thereby render meaningless Section 1367(a)'s limitation of supplemental jurisdiction" to only those claims forming part of the same Article III case or controversy.  *Pro Bono Invs., Inc. v. Gerry*, No. 03–CV-4347, 2005 WL 2429787, at *13 & n.12 (S.D.N.Y. Sept. 30, 2005).  In light of the Second Circuit's continuing reliance on *Gibbs* as well as the language of Section 1367, the answer to Defendants' broad state law counterclaims is not to find supplemental jurisdiction over Plaintiffs' equally broad state law claims.  Instead, the Court must dismiss all claims that do not share a common nucleus of operative fact with Plaintiffs' federal claims, regardless of whether they are pled as a claim, counterclaim, crossclaim, cross-counterclaim or setoff.

12

**A.  Supplemental Jurisdiction over Plaintiffs' Claims**

**1.  Defendants' Failure to Make Loan Payments**

The Court finds that Plaintiffs' Eleventh and Nineteenth Causes of Action alleging breach of contract pertaining to loans LaChapelle made to Torres in 2011 do not share a common nucleus of operative fact with Plaintiffs' federal claims.  There is no allegation that these loans, made before Torres was terminated, were related in any way to Torres's alleged trademark infringement after his termination.  *Cf. Rivera*, 497 F. Supp. 2d at 394 ("[C]ourts have held that there is no common nucleus of operative fact where the events underlying the federal claims occur at a different time than the events underlying the state law claims.").

Nor are these loans part of the same case or controversy as Plaintiffs' copyright claims. To establish a copyright claim, Plaintiffs must show "(i) ownership of a valid copyright; and (ii) unauthorized copying of the copyrighted work."  *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003).  While any inquiry into Plaintiffs' copyright claims must therefore delve into the limits *vel non* of Torres's authorization to create physical copies of LaChapelle's artwork, that analysis is entirely separate from whether LaChapelle lent Torres money, the terms of any such loans and whether Torres has repaid the loans.  Even if those loans were made in connection with the parties' business relationship, whether Torres exceeded his authority to fabricate LaChapelle works will require consideration of an entirely different set of facts than determining whether these two loans existed and were repaid.  *See, e.g.*, *Harris v. Seward Park Hous. Corp.*, 913 N.Y.S.2d 161, 162 (1st Dep't 2010) (elements of contract claim include "the existence of a contract, the plaintiff's performance thereunder, the defendant's breach thereof, and resulting damages"); *see also Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 468 (S.D.N.Y. 2008) (holding that an "employment relationship does not establish a 'common

nucleus of operative fact' where it is the sole fact connecting" a federal claim and a state claim). Accordingly, supplemental jurisdiction is lacking over these claims.

Even if the Court lacks subject-matter jurisdiction over the Eleventh Cause of Action, Plaintiffs ask the Court to stay dismissal so that they may seek an attachment in state court while still protected by the attachment previously entered in federal court. But because the Court lacks subject-matter jurisdiction over that claim, the order of attachment "is void and subject to vacatur." *Kenyon & Kenyon v. Advanced Eng'g Research & Dev. Corp.*, No. 97-CV-5909, 1998 WL 318712, at *3 (S.D.N.Y. June 16, 1998). Further, as a court of limited jurisdiction, the Court cannot adjudicate claims over which it lacks jurisdiction. *See, e.g.*, Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009) ("'It is a fundamental precept that federal courts are courts of limited jurisdiction' and lack the power to disregard such limits as have been imposed by the Constitution or Congress." (quoting *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978))).

The original order of attachment required a showing that it was "probable that the plaintiff [would] succeed on the merits" of the Eleventh Cause of Action. N.Y. C.P.L.R. § 6212(a). That determination was beyond the Court's jurisdiction to make. Accordingly, the Court dismisses Plaintiffs' Eleventh and Nineteenth Causes of Action and vacates the order of attachment entered on July 18, 2013 (ECF No. 113) without prejudice to a new application in state court.

### 2. Defendants' Communications with Third Parties

Plaintiffs' Twelfth Cause of Action for tortious interference, which stems from Torres's communications with third-parties in March 2013 after his termination by LaChapelle, are

14

similarly outside the Court's supplemental jurisdiction.  Under New York law, a claim for tortious interference with business relations requires a showing that "(i) the plaintiff had business relations with a third party; (ii) the defendants interfered with those business relations; (iii) the defendants acted for a wrongful purpose or used dishonest, unfair, or improper means; and (iv) the defendants' acts injured the relationship."  *Scutti Enters., LLC v. Park Place Entm't Corp.*, 322 F.3d 211, 215 (2d Cir. 2003) (quoting *Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 214 (2d Cir. 2002)).  Thus, the evidence to prove this claim would focus on the contents of Defendants' statements to specific third parties in March 2013, Defendants' purpose in making those statements, and the nature of Plaintiffs' relationship with those third parties.

By contrast, Plaintiffs' trademark claims focus on Defendants' use of LaChapelle's name, the marketing of LaChapelle artwork on various websites that were under Defendants' control and a December 2012 exhibition of LaChapelle artwork in Montana.  This conduct is entirely separate from anything Defendants said or did in March 2013.  And while Defendants' statements in March may have concerned LaChapelle's artwork, the focus of the legal claim is whether Defendants wrongfully demanded that LaChapelle art be delivered to them.  Resolving this tort claim will require an inquiry into what authority, if any, Defendants had *post-termination* — not the scope of Defendants' authority to fabricate art *during* their representation of Plaintiffs or Defendants' representation post-termination of a continuing business connection to LaChapelle.  Plaintiffs' tortious interference claim is not part of the same common nucleus of operative facts as Plaintiffs' federal claims.  Supplemental jurisdiction over Plaintiffs' tortious interference claim is, therefore, lacking.

### 3. Defendants' Promises to Repay Plaintiff

Plaintiffs' Fourteenth and Fifteenth Causes of Action for fraud and promissory estoppel arise from Torres's promises to LaChapelle in April 2012 that he would repay his debts.  Both of

these claims focus on specific representations Torres allegedly made regarding his ability and

intent to repay LaChapelle.  *See Weinreb v. Hosp. for Joint Diseases Orthopaedic Inst.*, 404 F.3d

167, 172 (2d Cir. 2005) (promissory estoppel requires showing injury caused by reliance on a

promise and "injustice if the promise is not enforced" (quoting *Schonholz v. Long Island Jewish*

*Med. Ctr.*, 87 F.3d 72, 79 (2d Cir. 1996))); *Abu Dhabi Commercial Bank v. Morgan Stanley &*

*Co*, 888 F. Supp. 2d 478, 484 (S.D.N.Y. 2012) (fraud requires showing "a misrepresentation or a

material omission of fact which was false and known to be false by defendant").These promises

were made well before Torres had been terminated and are, therefore, separate both in time and

in substance from Plaintiffs' trademark claims.  Further, whether Torres would pay the amounts

he owed to LaChapelle is unrelated to whether he exceeded his authority in making copies of

LaChapelle works.  Indeed, the alleged copyright violation allegedly took place "[i]n or about

2011" (Third Am. Compl. ¶ 147), well before Torres's April 2012 representations.  Accordingly,

the Court lacks supplemental jurisdiction over Plaintiffs' fraud and promissory estoppel claims.

**B.  Supplemental Jurisdiction Over Defendants' Claims**

    **1.  Defendants' Claims for Personal Expenses**

    The Court turns next to Defendants' claims over which supplemental jurisdiction is

lacking.  First, to the extent Defendants seek to obtain reimbursement for LaChapelle's personal

expenses, that claim is dismissed.  (*See* Counterclaim ¶ 86.)  Expenses incurred for personal

items on LaChapelle's behalf are unrelated to whether Defendants violated Plaintiffs' intellectual

property rights.  That the parties had a business relationship with one another concerning

LaChapelle's artwork is an insufficient basis to link these personal expenses to Plaintiffs'

copyright and trademark claims.  *See Rivera*, 497 F. Supp. 2d at 394 (supplemental jurisdiction

lacking where "the only factual link . . . is that the underlying events occurred during the course

of plaintiff's employment").  This claim therefore falls outside the Court's supplemental jurisdiction.

### 2.  Plaintiffs' Communications with Third Parties

Defendants' Fourteenth Cause of Action for tortious interference focuses on communications between Plaintiffs and Defendants' customers.  The evidence necessary to prove these claims will involve, *inter alia*, the content of conversations between Plaintiffs and third parties, the motives for those conversations and the impact they had on Defendants' business.  The evidence necessary to prove or defend against Plaintiffs' federal claims, which will revolve around whether Defendants' fabrication work or use of LaChapelle's name were authorized, will not overlap at all with evidence tending to show that Plaintiffs tortiously interfered with Defendants' business.  In short, whether Plaintiffs engaged in tortious interference is outside the Court's supplemental jurisdiction.

For similar reasons, Defendants' Eleventh Cause of Action for money had and received is also outside the Court's jurisdiction.  To the extent this claim involves the diversion by Plaintiffs of payments from third parties that should have been made to Defendants, these claims are entirely unconnected to Plaintiffs' copyright and trademark claims.  *See State v. Int'l Asset Recovery Corp.*, 866 N.Y.S.2d 823, 826 (3d Dep't 2008) (money had and received claim requires showing "defendant received money belonging to [the] plaintiff" (alteration in original) (quoting *Matter of Witbeck*, 666 N.Y.S.2d 315 (3d Dep't 1997))).  Evidence relevant to this claim will include the nature of the debt owed by the third party to Defendants and the actions Plaintiffs took to interfere with payment of that debt.  None of that has any overlap with evidence necessary to prove or defend against Plaintiffs' federal claims.  Moreover, as will be explained further below, even if this claim is based on the alleged theft of property (other than art) from Defendants by Plaintiffs and their agents, the facts underlying such a claim are unconnected to

17

the core federal issues.  In short, Defendants' Eleventh Cause of Action is outside the Court's supplemental jurisdiction.

### 3.  Plaintiffs' and Third-Parties' Misappropriation of Defendants' Property

The Court turns next to Defendants Ninth, Tenth, Twelfth, and Fifteenth Causes of Action for conversion, replevin, trespass to chattels, and prima facie tort with respect to actions Plaintiffs and their agents took at the end of LaChapelle's and Torres's business relationship.  At their core, these claims involve Defendants' allegations that, as the relationship between Torres and LaChapelle deteriorated, Plaintiffs and certain Third Party Defendants conspired to steal personal property, customer lists and other proprietary business information from Defendants.  In addition, Defendants also contend that certain fabricated artwork was stolen.

To the extent these claims involve the misappropriation of fabricated LaChapelle artwork, Plaintiffs' claims are within this Court's supplemental jurisdiction.  Neither Plaintiffs' nor Defendants' pleadings make clear whether these works are also the subject of the parties' copyright dispute.  But to resolve the claims relating to the art, rightful ownership of the LaChapelle art must be determined.  *See, e.g.*, *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 437 (2d Cir. 2004) ("A trespass to chattel occurs when a party intentionally damages or interferes with the use of property belonging to another." (quoting *City of Amsterdam v. Goldreyer, Ltd.*, 882 F. Supp. 1273, 1281 (E.D.N.Y. 1995))); *Dore v. Wormley*, 690 F. Supp. 2d 176, 183 (S.D.N.Y. 2010) ("A cause of action in replevin 'must establish that the defendant is in possession of certain property of which the plaintiff claims to have a superior right.'" (quoting *Batsidis v. Batsidis*, 778 N.Y.S. 2d 913, 913 (2d Dep't 2004))); *Regions Bank v. Wieder & Mastroianni, P.C.*, 526 F. Supp. 2d 411, 413 (S.D.N.Y. 2007) (conversion requires plaintiff to show "legal ownership" of property (quoting *Ahles v. Aztec Enters., Inc.*, 502 N.Y.S.2d 821, 822 (3d Dep't 1986))); *DeMicco Bros., Inc. v. Consol. Edison Co. of N.Y., Inc.*, 779 N.Y.S.2d 10, 11

18

(1st Dep't 2004) (prima facie tort claim requires, *inter alia*, "intentional infliction of harm . . . without excuse or justification").  Determining who owns the artwork will require an inquiry into whether Defendants exceeded their authority in fabricating the contested works.  Such authority or lack thereof also undergirds Plaintiffs' copyright claims.  Accordingly, Defendants' claims related to theft of fabricated works is sufficiently related to Plaintiffs' federal claims to fall within the Court's supplemental jurisdiction.  *See Lyndonville Sav. Bank*, 211 F.3d at 704 (supplemental jurisdiction exists where "the federal claim necessarily brought the facts underlying the state claim before the court").

In large measure, however, this group of Defendants' claims is unrelated to ownership of art.  Instead, as noted above, Defendants focus their claims on the theft of customer lists, proprietary business data, and unspecified personal property.  Determining the rightful owner of those items will likely require inquiry into Defendants' and Plaintiffs' business relationship, *see, e.g.*, *Youssef v. Halcrow, Inc.*, No. 11-CV-2283, 2011 WL 5244950, at *2 (S.D.N.Y. Nov. 1, 2011) ("Under New York law, the work product of an agent 'within the scope of his assigned duties as an employee' is 'owned by the employers *ab initio*.'" (quoting *Pullman Grp., LLC v. Prudential Ins. Co. of Am.*, 733 N.Y.S.2d 1, 3 (1st Dep't 2001)), but not into the aspects of that relationship that include Defendants' authority to make use of Plaintiffs' intellectual property.  The evidence necessary to prove ownership of business information is not connected to the evidence necessary to prove the extent of Defendants' authority to fabricate works or to advertise his connection to LaChapelle.  Further, whether Plaintiffs and their agents engaged in the type of corporate espionage of which Defendants complain will require evidence, *inter alia*, regarding the actions of numerous former employees over an extended period of time, their motives and the impact of their actions on Defendants' business.  That evidence does not overlap at all with evidence related to whether Defendants made unauthorized representations in violation of

19

trademark laws or unauthorized copies in violation of copyright laws.  Thus, to the extent

Defendants' Ninth, Tenth, Twelfth, and Fifteenth Causes of Action involve property other than

LaChapelle artwork, those claims are dismissed.[6]

According to Defendants, Kasmin Galley was an ultimate beneficiary of the scheme to

misappropriate Defendants' proprietary business data.  On this basis, Defendants bring an unfair

competition claim against Plaintiffs and Kasmin Gallery in their Sixteenth Cause of Action.

Determining whether Plaintiffs and Kasmin engaged in unfair competition will require evidence

relating to the parties' agency relationship and an inquiry into whether that relationship conferred

upon Plaintiffs an ownership interest in the proprietary information taken.  *See CA, Inc. v.*

*Simple.com, Inc.*, 621 F. Supp. 2d 45, 53 (E.D.N.Y. 2009) (noting that the "essence" of unfair

competition claims is "misappropriat[ion of] the labors and expenditures of another" (alteration

in original) (quoting *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir.

1980))).  That evidence simply does not overlap with or relate in any way to whether Defendants

violated Plaintiffs' trademark or copyright.  Put differently, Defendants' unfair competition

claim does not share a common nucleus of operative fact with Plaintiffs' federal claims.

Defendants' Sixteenth Cause of Action is therefore dismissed.

### 4.  Defendants' Arrangement of an Exhibition at Kasmin Gallery

The Court turns next to Defendants' Fifth, Sixth, Seventh, Eighth, and Eighteenth[7]

Causes of Action, which are against Kasmin Gallery for breach of contract, promissory estoppel,

quantum meruit, and unjust enrichment, as well as an accounting.  These claims are based on

---

[6]        As explained above, Defendants' claims against Plaintiffs, Hynd, Tanimura, Mockler, Dacey, Arndt,
Leedy, and Zucharello survive to the extent they are based on the theft of fabricated works that may be the subject of
Plaintiffs' copyright claims.  Anderson, however, was allegedly involved only in the theft of certain financial and
attorney-client information.  (Counterclaim ¶ 58.)  Because Defendants do not contend that Anderson also stole
fabricated works, all claims against him are dismissed for lack of supplemental jurisdiction.
[7]        The Eighteenth Cause of Action is also against Plaintiffs.

Kasmin Gallery's alleged failure to pay what it owed Defendants for an exhibition of LaChapelle works that Defendants arranged.  Kasmin Gallery counterclaims against Defendants for breach of contract, unjust enrichment, and fraud.  According to Kasmin Gallery, Defendants overstated the costs of putting on the exhibition, and Kasmin Gallery seeks to recover the amounts it overpaid.

The Court lacks supplemental jurisdiction over all of these claims.  Analysis of Plaintiffs' copyright or trademark claims is entirely distinct from Defendants' and Kasmin Gallery's independent business dispute.  That the dispute arose out of an exhibition of LaChapelle art does not alter the analysis.  The facts necessary to prove Defendants' claims will involve the contract between Defendants and Kasmin, contracts with third parties who were involved in fabricating the art or providing other services connected to the exhibition, and records of sales made by Kasmin.  That evidence has absolutely no connection to the evidence necessary to prove or defend against Plaintiffs' federal claims.  The Court therefore lacks supplemental jurisdiction over Defendants' claims against Kasmin Gallery.  And because there is no supplemental jurisdiction over Defendants' claims against Kasmin Gallery, the gallery's counterclaims arising out of the same business dispute must also be dismissed.[8]

---

[8]     Defendants also nominally bring a breach of bailment claim (Defendants' Thirteenth Cause of Action) against Kasmin Gallery.  "Under New York law, 'bailment' is defined as a 'delivery of personal property for some particular purpose, or a mere deposit, upon a contract express or implied, providing that after such purpose has been fulfilled it shall be redelivered to the person who delivered it, or otherwise dealt with according to his directions or kept until he reclaims it, as the case may be.'" *Morgan Stanley & Co. v. JP Morgan Chase Bank, N.A.*, 645 F. Supp. 2d 248, 256 (S.D.N.Y. 2009) (quoting *Herrington v. Verrilli*, 151 F. Supp. 2d 449, 457 (S.D.N.Y. 2001)).  Defendants' allegations support a bailment claim only against RBA.  To the extent Defendants claim that a bailment existed pertaining to Kasmin Gallery's possession of Defendants' proprietary data, the Court lacks supplemental jurisdiction to adjudicate such a claim for the same reason the Court lacks supplemental jurisdiction over Defendants' unfair competition claim.  Nor does the Court read the complaint to state a bailment claim related to any LaChapelle artwork that may still be in Kasmin Gallery's possession.  Thus, if Defendants intended to state a breach of bailment claim against Kasmin Gallery, that claim is dismissed.

**C. Exercising Supplemental Jurisdiction Over the Remaining State Law Claims**

Defendants urge that if the Court dismisses any state law claims, the Court should decline to exercise supplemental jurisdiction over all state law claims pled in this action.

The Court may decline supplemental jurisdiction only if it "identifies one of the factual predicates which corresponds to one of the subsection 1367(c) categories." *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 446 (2d Cir. 1998). Those categories consist of whether

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). But even if one of these factual predicates exists (and it does not appear that any does given the now-diminished scope of state law claims), the Court should still exercise supplemental jurisdiction unless such exercise "would not promote the values articulated in *Gibbs*: economy, convenience, fairness, and comity." *Jones*, 358 F.3d at 214 (internal citation omitted).

This case has been pending in federal court since December 21, 2012. Although the Court must dismiss claims over which it lacks subject-matter jurisdiction regardless of the case's age, the length of time the remaining claims have been pending in federal court counsels against declining supplemental jurisdiction over state law claims that form part of the same case or controversy as Plaintiffs' federal claims.[9] Further, this litigation's highly-contested and fact-

---

[9]  Plaintiffs' remaining state law Causes of Action are the Second through Tenth (breach of the parties' agreement as to LaChapelle's artwork), Thirteenth (alter ego liability between Torres and FTC), Sixteenth (breach of fiduciary duties under N.Y. Arts and Cultural Law), and Seventeenth (breach of fiduciary duties under N.Y. Trust and Estates Law). Defendants' remaining state law Causes of Action are (1) the First through Fourth (unpaid fees, commissions, and fabrication costs); (2) the Ninth, Tenth, Twelfth and Fifteenth, to the extent these claims involve misappropriation of LaChapelle artwork; (3) the Thirteenth against RBA (breach of bailment); (4) the Seventeenth

intensive nature would require another court quickly to confront issues with which this Court is already familiar.  *See Alderman v. Pan Am World Airways*, 169 F.3d 99, 102 (2d Cir. 1999) (approving exercise of supplemental jurisdiction in part because district court "was already familiar with the relevant facts and legal issues").  Dismissing the remaining state law claims at this late date therefore would be neither economical nor fair, and therefore the Court will retain jurisdiction over them.

## CONCLUSION

For the reasons stated above, Plaintiffs' Eleventh, Twelfth, Fourteenth, Fifteenth, and Nineteenth Causes of Action against Defendants are DISMISSED.  Defendants' claims seeking reimbursement for personal expenses, all of Defendants' claims against Michael Anderson and Kasmin Gallery, and Defendants' Eleventh, Fourteenth, and Sixteenth Causes of Action are also DISMISSED.  In addition, Defendants' Ninth, Tenth, Twelfth, and Fifteenth Causes of Action are DISMISSED except to the extent that they involve the alleged theft of LaChapelle artwork. Kasmin Gallery's counterclaims are also DISMISSED.  Finally, the order of attachment entered on July 18, 2013 (ECF No. 113) is VACATED.

**SO ORDERED.**

**Date:   August 7, 2014**
**New York, NY**

                                        **VALERIE CAPRONI**
                                        **United States District Judge**

---

(artisan's lien); (5) the Eighteenth against Plaintiffs only (account stated); and (6) the Nineteenth through Twenty-First (alter ego/vicarious liability and an accounting).  RBA's interpleader claim also remains in the case.